UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/30/2020__
```

-------------------------------------------------------------------X
                                          :

PB LIFE AND ANNUITY CO. LTD.,             :

                                         :

                          Plaintiff,      :

                  -v-                  :      20-cv-2284 (LJL)

                                         :

UNIVERSAL LIFE INSURANCE COMPANY,    :      <u>OPINION & ORDER</u>

                                       :

                          Defendant.   :

                                         :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff PB Life and Annuity Co. Ltd., formerly known as Private Bankers and Annuity

Co., Ltd., ("PBLA") brought this action, pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201,

2202, seeking a declaratory judgment that a breach of contract dispute with Defendant Universal

Life Insurance Company ("ULICO") was not subject to arbitration and must be litigated in

federal or state courts in New York.  Dkt. No. 5.  Defendant ULICO filed a motion to compel

arbitration, Dkt. No. 14, and PBLA filed a motion for a preliminary injunction which the parties

later agreed would be converted into a motion for a permanent injunction, Dkt. Nos. 19, 26.

      On May 12, 2020, the Court granted Defendant's motion to compel arbitration and

denied Plaintiff's motion for a permanent injunction of the arbitration.  Dkt. No. 33 (the "May

12, 2020 Opinion").  On June 2, 2020, the arbitral panel issued an interim award to ULICO.  Dkt.

No. 36-1 (the "Award").  Defendant now moves to confirm the arbitration award pursuant to 9

U.S.C. §§ 9, 207.  Dkt. No. 34.

      For the reasons discussed below, Defendant's motion to confirm is granted.

## BACKGROUND

The Court presumes the parties' familiarity with the factual background of this case as set forth in its May 12, 2020 Opinion, and includes here only additional facts or those helpful in deciding the instant motion.  *See PB Life & Annuity Co. v. Universal Life Ins. Co.*, 2020 WL 2476170, at *1 (S.D.N.Y. May 12, 2020).

### I.     The Agreements

ULICO is an insurance company organized under the laws of Puerto Rico with its principal place of business in Puerto Rico.  PBLA is an insurance company organized under the laws of Bermuda with its principal place of business in Bermuda.  PBLA is a member of the Global Growth family of companies that was founded by Greg Lindberg ("Lindberg").  *See* Dkt. No. 43 ("Knoezer Decl."), Ex. B at 2; Dkt. No. 41 ("Pace Decl."), Ex. 8 at 4-5.[1]  Lindberg was arrested in April 2019 and found guilty of financial crimes, including public corruption and bribery, in March 2020 by a federal jury sitting in the Western District of North Carolina.  *See* Dkt. No. 15 at 8.

PBLA and ULICO are parties to a coinsurance reinsurance agreement ("Reinsurance Agreement") whereby PBLA agreed to reinsure liabilities with respect to certain insurance policies issued by ULICO.  Under the Reinsurance Agreement, ULICO agreed to cede to PBLA and PBLA agreed to reinsure between 75% and 100% of ULICO's obligations under certain insurance policies or annuity contracts written by ULICO, with the percentage of reinsurance depending upon the particular type of policy sold.  Section 4.2(a) of the Reinsurance Agreement requires that PBLA post collateral in respect of its reinsurance obligations "in accordance with Article 11 of Rule 98 of the Insurance Code of Puerto Rico."  Article 11(D)(1)(b) of Rule 98, in

---

[1] The parties dispute whether Lindberg and Global Growth control PBLA.  *See* Pace Decl., Ex. 8 at 9; Knoezer Decl., Ex. B at 2.

turn, requires that "investments in or issued by an entity controlling, controlled by or under common control with either the grantor or the beneficiary of the [Trust Account] shall not exceed ten percent (10%) of total investments."  Section 4.2(a) of the Reinsurance Agreement further contemplates that the parties will enter into a second agreement to establish the account that will hold these reserves ("Trust Account").  Section 10.1 of the Reinsurance Agreement contains an arbitration clause covering disputes arising under or relating to the Reinsurance Agreement.

As required by the Reinsurance Agreement, PBLA and ULICO are also parties to a reinsurance trust agreement effective February 16, 2018 ("Trust Agreement").  The Bank of New York Mellon is also a party to that agreement as trustee.  The Trust Agreement does not have an arbitration clause, but instead, Section 6.5 requires that proceedings relating to the Trust Agreement be brought in courts located within the city and state of New York or elsewhere as the trustee may select.

## II.    The Arbitration

The arbitration grows out of a January 16, 2020 written notice by ULICO to PBLA informing the latter that it had violated Section 4.2(a) of the Reinsurance Agreement, which required that collateral be in accordance with Article 11 of Rule 98 of the Insurance Code of Puerto Rico.  ULICO claimed that over 65% of the assets held in the Trust Account were loan obligations of PBLA's affiliated entities and therefore violated this 10% rule under Puerto Rico law.[2]  The written notice was followed by a formal written demand for arbitration sent by ULICO to PBLA on January 27, 2020.

---

[2] Specifically, ULICO claims that Lindberg drained $524 million in cash-equivalent assets from the Trust Account and replaced them with loans from special purpose vehicles personally owned by him and that ULICO had suffered rating downgrades as a result.  *See* Dkt. No. 15 at 8-9; Knoezer Decl., Ex. B at 7-8.

PBLA attempted to avoid arbitration, at first denying that the dispute was subject to arbitration under the Reinsurance Agreement and refusing to participate in the arbitration or to name an arbitrator.  After ULICO requested that the American Arbitration Association ("AAA") appoint an arbitrator on PBLA's behalf and the AAA indicated it would do so, PBLA again attempted to avoid arbitration by filing this action to seek a declaratory judgment that the dispute between it and ULICO was not subject to arbitration.  PBLA's attempts were unsuccessful.  This Court denied PBLA's request for a temporary restraining order ("TRO") during a hearing on April 27, 2020.  In its May 12, 2020 Opinion, the Court denied PBLA's motion for a permanent injunction restraining arbitration and granted ULICO's motion to compel arbitration.

The arbitration went forward.  On April 29, 2020, after this Court had denied the TRO and while it was considering the motion for a permanent injunction, the parties had a telephonic preliminary hearing before the arbitral panel in which ULICO presented its position statement that set forth the basis for the dispute and argued that it was arbitrable.  Knoezer Decl., Ex. B.[3] The position statement also said that ULICO would be seeking interim relief in the form of security to rectify the deficiency in the collateral that PBLA had deposited in the Trust Account, and it proposed a schedule by which the parties would file motions on ULICO's request for pre-hearing security.  PBLA also submitted a position statement but did not submit it to this Court.  *See* Knoezer Decl., Ex. C ("Prelim. Hr'g Tr.") at 21:23-25 (panel noted that it had "received position statements from both parties").

The following day, the panel issued a briefing schedule for the requested interim relief. *Id.*, Ex. D.  ULICO's motion would be due by May 6, 2020, PBLA's opposition by May 20, 2020, and ULICO's reply by May 27, 2020.  *See id.* Ex. B at 14, Ex. D.  The panel scheduled the

---

[3] Because PBLA denied that it was subject to arbitration, its counsel appeared at the meeting under a reservation of rights.  *See* Prelim. Hr'g Tr. at 4:11-21.

motion for a hearing on May 29, 2020, after which time the panel would have received briefing from both parties.[4]

On May 29, 2020, the panel held a two-hour hearing on ULICO's motion for interim relief. During the hearing, ULICO highlighted evidence that PBLA's December 31, 2019 quarterly investment report identified 59 of the 65 securities in the Trust Account as related-party assets, equivalent to $524 million, and that the percentage of related-party assets in the Trust Account violated both Puerto Rico's insurance regulations and the terms of the Reinsurance Agreement. *See* Pace Decl., Ex. 10 ("Award Hr'g Tr.") at 11:16-12:7. These violations had led rating agency A.M. Best to downgrade ULICO twice, and A.M. Best indicated it would do so again if the situation were not remedied. *See id.* at 12:2-12, 53:19-54:3; *see also* 13:3-7 (downgrades "were expressly a result of concerns over the assets that PBLA has in its [Trust Account]"). ULICO further explained that as a company that sells policies to private individuals, its credit rating is "the most important thing," and that if it loses that credit rating, it will go out of business. *Id.* at 12:21-13:3. As a result, it requested as preliminary relief that the panel order PBLA to place a deposit of $524 million into a separate, segregated account under the supervision of the panel so that PBLA could not replace that deposit with other assets. *See id.* at 13:8-14:3.

PBLA responded that the "central dispute" was whether the assets were sufficiently valuable and argued that they were valuable, safe, and liquid. *Id.* at 16:23-2, 37:14-38:19. To support this point, PBLA stated that ULICO had previously represented that the assets in the

---

[4] On May 24, 2020, the panel decided the question of arbitrability. It found that the Reinsurance Agreement and its arbitration clause were not superseded by the Trust Agreement, and that the dispute between ULICO and PBLA implicated the Reinsurance Agreement and the Trust Agreement and thus came within the scope of the arbitration clause. Award at 3; *see also* Knoezer Decl., Ex. L.

predecessor account to the Trust Account, and those which PBLA asserted were also in the Trust Account, were worth $500 million. *Id.* at 24:22-26:9. It further argued that ULICO had not met its burden of showing the value of the Trust Account assets. *Id.* at 33:20-37:13.

On June 2, 2020, the panel issued an order granting ULICO's motion for preliminary relief and requiring PBLA to deposit $524,009,051.26 in a separate bank account strictly for the purpose of securing PBLA's obligations under the Reinsurance Agreement and, if necessary, for ULICO's payment of any liabilities incurred pursuant to ULICO's obligations (the "Segregated Account"). *See* Award at 6 ¶¶ 1-3. The Award requires PBLA to deposit the funds within ten (10) business days of the Award, after which date interest will run at 6% per annum. *Id.* at 6 ¶ 1. The panel noted that the Award was preliminary to a determination on the merits and asked the parties to meet and confer in order to propose a pleading and discovery schedule and a hearing date for the merits portion of the arbitration. *Id.* at 7 ¶ 7.

In issuing the Award, the panel relied on the fact that the assets in the Trust Account did not conform to Puerto Rico's insurance regulations and the terms of the Reinsurance Agreement. The panel stated:

> [T]he question of the value of the assets in the Trust Fund is, of course, important (ULICO has argued $500M were of no value and PBLA argued the opposite), but if such assets do not conform to the requirements of the Applicable Laws of Puerto Rico then ULICO would not receive full credit in its statutory financial statements as required by Section 4.1 (a) of the Reinsurance Agreement.
> . . . .
> ULICO's complaints have been that PBLA replaced assets that do conform to regulatory requirements with assets that do not comply. PBLA is an 'unauthorized reinsurer' and has been repeatedly requested by ULICO to replace such non conforming assets. Based on the evidence, the Panel concluded that PBLA had singularly failed to 'take such steps as may be required' of it to ensure that ULICO receive full credit on its financial statements, quite the opposite.

*Id.* at 4-5.

At the same time, the panel found that "ULICO's assertions in respect of the assets (both as regards value and conformity) are correct and that ULICO has established an immediate need for the requested relief, so as to protect its policyholders and itself." *Id.* at 4. The panel also commented on the process of the arbitration:

> Both parties were given a fair opportunity to add by way of argument to that presented in their respective briefs. Both sides had supplied, by way of evidence, many exhibits. ULICO also provided sworn witness statements from ULICO's Chief Actuary and its Chief Investments Officer. Questions were asked by the Panel. The oral argument lasted two hours, and both sides were encouraged to respond to each other's presentations and to answer questions from panel members; oral argument ended only after both sides had the full opportunity to explain their positions and advised they had nothing further to add.

*Id.* at 3-4. Regarding PBLA's opportunity to present its case, the panel stated that:

> The Panel is also persuaded that PBLA has had more than ample time to present to this Panel standard financial information to counter ULICO's positions.
> More specifically, ULICO through its Chief Investments Officer clearly and convincingly explained that ULICO has raised material issues concerning the type and value of the subject assets since late 2018; that PBLA's responses were neither timely, consistent, nor accurate; and that such responses directly led to ULICO's demand for arbitration in January 2020.
>
> Furthermore, ever since these issues were raised by ULICO over 18 months ago, PBLA had every incentive and opportunity to obtain and present reports to ULICO and then to this Panel that clearly explained the true nature and fair market value of these assets and put forth its position as to whether the assets do conform to regulations.
>
> Instead, PBLA presented outdated information that fails to support its claims and the requirement that these investments (in order of priority) are safe, liquid, and generate investment income, and their exhibits also fail to support its claims regarding control of assets.

*Id.* at 4-5; *see also id.* at 5 ("[T]he vast majority of the financial information provided by PBLA predated the March 18, 2019 indictment of Mr. Lindberg and others connected with him."). The panel concluded that "[t]his situation alone is sufficient for this Panel to grant ULICO's request." *Id.*

The panel granted the relief of placing cash into the Segregated Account under its supervision, noting that enforcement of its ruling was "needed to forestall another downgrade" of ULICO, such as one that had already occurred "as a result of the uncertain status of the subject assets." *Id.* In creating the Segregated Account, the panel "concluded that ordering PBLA to replace the nonconforming assets with conforming ones would simply cause more delay and obfuscation on the part of PBLA and cause irreparable harm to ULICO." *Id.* at 6. "On the other hand, if the assets currently in the Trust Fund were indeed of value (as PBLA continued to assert), but just do not meet the requirements of Puerto Rico Law credit for reinsurance, then no harm would come to PBLA." *Id.*

### III.    Instant Motion

On June 4, 2020, ULICO filed a motion to confirm the Award. Dkt. No. 34; *see also* Dkt. No. 35 ("Br."). PBLA filed an opposition brief and also a cross-motion to vacate the Award on July 2, 2020, Dkt. No. 40 ("Opp. Br."), and ULICO replied on July 9, 2020, Dkt. No. 42 ("Reply"). PBLA submitted a reply brief in support of its cross-motion on July 16, 2020. Dkt. No. 46.

### LEGAL STANDARD

Pursuant to Section 207 of the Federal Arbitration Act ("FAA"), "[t]he court shall confirm [an arbitration] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. The parties agree that both the FAA and New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") apply. *See* Br. at 6-7; Opp. Br. at 14-15. Because PBLA and ULICO are organized under the laws of Bermuda and Puerto Rico with their principal places in those localities, respectively, the Convention applies. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (holding

that the Convention applies to arbitration agreements that "involv[e] parties domiciled or having their principal place of business outside [the United States]"). "The domestic provisions of the FAA also apply, as is permitted by Articles V(1)(e) and V(2) of the New York Convention," because the Award was entered in the United States. *Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006) ("The FAA and the New York Convention work in tandem, and they have overlapping coverage to the extent that they do not conflict.").

Article V of the Convention provides seven grounds on which confirmation of an award may be denied:

(1) Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
    (a) The parties to the agreement [to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
    (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
    (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
    (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
    (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
(2) Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38; *see* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.").

Section 10 of the FAA establishes the four circumstances in which a court may vacate an arbitral award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

The "role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the FAA.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103-04 (2d Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)).  This deference promotes the "twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009).  In evaluating a petition to confirm or vacate, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).  A court "must" grant an order to

confirm the award unless it is "vacated, modified, or corrected."  9 U.S.C. § 9; *see also D.H.*

*Blair & Co.*, 462 F.3d at 110.  Accordingly, in most cases, "confirmation of an arbitration award

'is a summary proceeding that merely makes what is already a final arbitration award a judgment

of the court.'"  *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Florasynth, Inc. Pickholz*, 750 F.2d

171, 176 (2d Cir. 1984)).

## DISCUSSION

ULICO moves to confirm the Award while PBLA cross moves to vacate the Award

pursuant to four bases under the FAA and Convention.

None of these bases is sufficient to vacate the Award.

## I.     Cross-Motion to Vacate

### A.     Whether the Panel Denied PBLA Due Process

PBLA argues that the arbitral panel denied it a fair opportunity to present its case under 9

U.S.C. § 10(a)(3) and Article V(1)(b) of the Convention because PBLA "was not given the

opportunity to generate new independent expert reports showing the value of the trust assets, or

the opportunity to obtain important discovery from ULICO on the same issue."  Opp. Br. at 16;

*see also id.* at 15.

In arguing that the panel denied it due process, PBLA faces a heavy burden.  Courts may

vacate an arbitral award "only where there is a denial of 'fundamental fairness.'"  *Kolel Beth*,

729 F.3d at 103-04 (quoting *Tempo Shain*, 120 F.3d at 20).  "It is well settled that procedural

questions that arise during arbitration, such as which witnesses to hear and which evidence to

receive or exclude, are left to the sound discretion of the arbitrator and should not be

second-guessed by the courts."  *Nat'l Football League Mgmt. Council v. Nat'l Football League*

*Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *United Paperworkers Int'l Union v.*

*Misco, Inc.*, 484 U.S. 29, 40 (1987)).  "Arbitrators are accorded great deference in their

evidentiary determinations, and 'need not follow all the niceties observed by the federal courts.'" *Kolel Beth*, 729 F.3d at 107 (quoting *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974)).  And although the panel "must give each of the parties to a dispute an adequate opportunity to present its evidence and argument," it is "not required to hear all the evidence proffered by a party." *Id.* (quoting *Tempo Shain*, 120 F.3d at 20).

Further, the parties agreed to be bound by the evidentiary determinations of the panel. Section 10.1(a) of the Reinsurance Agreement provides that "the arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the [AAA]."  Dkt. No. 22-1, Art. X § 10.1(a).  Rule 34 of the Commercial Arbitration Rules of the AAA in turn states that "[t]he arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the Arbitrator to be cumulative or irrelevant."  AAA R-34(b).  The parties also agreed that the arbitrators "shall not be bound by legal rules of procedure and may receive evidence in such a way as to do justice between the Parties."  Dkt. No. 22-1, Art. X § 10.1(d).

As to its first basis for claiming fundamental unfairness, PBLA argues that because of the expedited schedule on the motion for security, "it was unable to generate current third-party expert reports analyzing the trust account's assets and debunking ULICO's claim," and therefore it was "forced" "to rely on historical expert reports of the account assets."  Opp. Br. at 1. Specifically, its expert, Duff & Phelps, was "performing an updated evaluation of the Trust Account's current assets, and PBLA expect[ed] to engage (or re-engage) other experts to perform similar reviews."  Pace Decl., Ex. 8 at 26.  By the time of the hearing on the interim award, PBLA had "received a draft from Duff & Phelps of its valuation of the current assets in the trust account" which it expected "can be finalized within a week" and that a report was being prepared

by Berkeley Research Group that it expected to be completed "late summer of this year."  Award Hr'g Tr. at 36:9-22.  PBLA had expected both reports to demonstrate that "the investments are sufficiently valuable and a far cry from worthless IOU's."  *Id.* at 36:23-37:4.  As a result, PBLA argues that postponement of the hearing and introduction of the "new expert reports would not have been cumulative and would have changed the outcome by confirming that the trust account's assets remain sufficiently valuable—particularly since ULICO offered no firsthand analyses of the trust assets to support its motion."  Opp. Br. at 1.

The panel was well within its discretion in rejecting this argument.  PBLA argues that the expert reports were key because they would have shown that the assets in the Trust Account were valuable; however, the basis for the panel's ruling was not the value of the assets in the Trust Account, but rather whether they were qualifying assets.  *See* Award at 4-5.  It determined that they were not qualifying.  That conclusion would not be undermined by evidence that the assets were valuable and PBLA makes no argument that it was precluded from offering evidence or argument on what was the central issue before the panel.  *See, e.g.*, *e.g.*, *Eaton Partners, LLC v. Azimuth Capital Mgmt. IV, Ltd.*, 2019 WL 5294934, at *3 (S.D.N.Y. Oct. 18, 2019), *appeal withdrawn*, 2020 WL 1650337 (2d Cir. Apr. 1, 2020) ("It is when the arbitrator refuses to accept evidence from a key witness that the misconduct can rise to the level required for vacatur.").[5]

The panel also noted that ULICO had brought to PBLA's attention "material issues concerning the type and value of the subject assets since late 2018" and that PBLA had "every incentive and opportunity to obtain and present reports" to ULICO and then to the panel on the

---

[5] The record also demonstrates that PBLA was given a full evidentiary hearing.  The Award was issued after briefing and a hearing on the Award.  In connection with that briefing, the record demonstrates that PBLA submitted "binders of voluminous exhibits," Award Hr'g Tr. at 71:16, including 54 exhibits, *id.* at 73:22-23.  PBLA could have submitted affidavits from its experts or corporate representatives in the meantime but does not appear to have done so.

value of the Trust Account assets.  Award at 4-5.  PBLA previously declined to obtain and

present such reports and therefore would not be permitted to do so now in order to delay the

proceedings.  The panel was "persuaded that PBLA has had more than ample time to present" to

the panel "standard information to counter ULICO's positions."  *Id.* at 4.  The two downgrades

and comments by A.M. Best about a possible third downgrade necessitated a ruling on the

motion; the panel was not required to ignore that exigency to permit PBLA to present evidence it

long had an incentive to produce and that was not material to the question at issue.  *See id.* at 5.

These conclusions did not fall outside the panel's broad discretion.  *See, e.g.*, *Eaton Partners*,

2019 WL 5294934, at *3 (When "a party has had the opportunity to present all their evidence,

and there is a wealth of evidence in the record to support the arbitration award, even an improper

exclusion of testimony does not constitute a denial of a fundamentally fair hearing"); *On Time

Staffing, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 784 F. Supp. 2d 450, 455 (S.D.N.Y.

2011) (rejecting argument that ordering the posting of pre-hearing security without first

conducting a full evidentiary hearing constituted misconduct under 9 U.S.C. § 10(a)(3)).

The same reasoning undermines PBLA's second basis for claiming fundamental

unfairness, which is the preclusion of discovery before the issuance of the Award.  PBLA argues

that it learned ULICO had obtained third-party reports analyzing the value of the Trust Account

assets and that when it "informed the panel of the existence of these case-dispositive documents,

. . . the panel refused to allow time for discovery before issuing its half-billion-dollar award."

Opp. Br. at 1-2.  In addition, PBLA had anticipated "discovery in this case to show that ULICO .

. . has known about the investments in the trust account and has had full visibility into the

investments in the trust account, including their nature since day one, and that PBLA was in fact

the party providing that transparency through quarterly reports that ULICO admitted in its

position statement it has been receiving since 2018."  Prelim. Hr'g Tr. at 29:5-25 (arguing that "ULICO has at this point waived any objection they may have to the trust assets that they knew of and approved all along").

PBLA relies on *Home Indemnity* in which the district court vacated the arbitral award because the panel refused to allow one of the parties any discovery unless they first posted security in the full amount that was at issue in the arbitration.  *Home Indemnity Co. v. Affiliated Food Distributors*, 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997).  However, in *Home Indemnity*, the district court found that the panel's order precluding discovery was in error because it barred the parties from reviewing certain documents "central to the dispute submitted."  *Id.* at *3.  Here, PBLA has not explained how the requested discovery into third-party reports would change the panel's determination.[6]  Nor does it describe how the fact of whether ULICO had "full visibility into the investments in the trust account" would be critical to proving whether the assets were in compliance with Puerto Rico's insurance regulations.  *See Doscher v. Sea Port Grp. Sec., LLC*, 2017 WL 6061653, at *5 (S.D.N.Y. Dec. 6, 2017), *aff'd*, 752 F. App'x 102 (2d Cir. 2019) (describing *Home Indemnity* as situation where petitioner was denied a "fundamentally fair hearing" because the arbitrator prevented "discovery of files central and dispositive to the dispute).  In fact, ULICO submitted to the panel the quarterly reports it had received from PBLA to demonstrate that the assets were related party assets that did not comply with Puerto Rico's insurance regulations.  *See* Reply at 3; Dkt. No. 43 ¶ 12.

---

[6] PBLA admitted that information central to the dispute might become pertinent only later when it stated that "if the panel here is required *at some point in the future to decide this issue on the merits*, then they ought to decide in favor of PBLA *after the discovery* from the expert witnesses and fact witnesses that we anticipate will all be necessary which will conclusively show that PBLA has complied with Puerto Rican law."  Prelim. Hr'g Tr. at 29:23-30:7 (emphasis added).

In essence, PBLA "does little more than complain that the panel issued its interim award without conducting a full hearing on the merits of its defenses." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Source One Staffing LLC*, 2017 WL 2198160, at *3 (S.D.N.Y. May 17, 2017). "By its very nature, however, a request for pre-hearing security is made on a limited record at an early stage of the arbitration proceedings and may be ordered before a full hearing on all defenses." *Id.* (internal quotation marks omitted) (collecting cases). Indeed, if the Court "were to rule, as [PBLA] urges, that it was denied due process for the sole reason that the panel would not hear its substantive defenses in advance of its decision on the security, then any such interim security provision would be subject to reversal on its face if it were issued before a full hearing on all defenses." *British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 518 (S.D.N.Y. 2000); *see Atlas Assur. Co. of Am. v. Am. Centennial Ins. Co.*, 1991 WL 4741, at *2-3 (S.D.N.Y. Jan. 16, 1991) (holding that panel did not violate "fundamental fairness" when it issued an interim award directing a defendant to post pre-judgment security after holding organizational meeting at which it "received, considered and discussed the parties' statements of issues and heard verbal statements by the parties' representatives"); *cf. Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 230 F. Supp. 2d 362, 372 n.12 (S.D.N.Y. 2002) (noting that decision on prejudgment security without giving parties an opportunity to engage in discovery and present evidence at a hearing did not deprive party of "fundamental fairness").

### B.      Whether the Award was Entered in Manifest Disregard of the Law

PBLA argues that the panel manifestly disregarded the law "by finding irreparable harm when ULICO sought money damages alone." Opp. Br. at 19.

A district court may "set aside an arbitration award if it was rendered in manifest disregard of the law." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011)). But vacatur

under the manifest disregard standard is limited to "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)).  "[T]he Court may vacate an award on the basis of manifest disregard of the law only if it finds that the Panel knowingly misapplied a law that was clear and explicitly applicable, leading to an erroneous outcome." *Precision Castparts Corp. v. Schutz Holding GmbH & Co. KG*, , 2020 WL 4003578, at *3 (S.D.N.Y. July 15, 2020); *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 79 (2d Cir. 2011) (a party "must first point to law that is well defined, explicit, and clearly applicable to the case") (internal quotation marks omitted).

The test has sometimes been described in three parts, as requiring a demonstration that (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators"; (2) "the law was in fact improperly applied, leading to an erroneous outcome;" and (3) "the arbitrator must have known of [the law's] existence, and its applicability to the problem before him." *T.Co Metals*, 592 F.3d at 339 (internal quotation marks omitted). Ultimately, the Court must grant the panel significant deference. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (manifest disregard is "a doctrine of last resort").  Indeed, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004).  Rather, an award should be confirmed if there is a colorable justification for the outcome reached.  *See id.*

PBLA has not provided any law that is contrary to the panel's decision or that was improperly applied.  PBLA argues that Puerto Rico law does not permit injunctive relief where

money damages are available.  But the cases to which PBLA cites refer to court proceedings rather than arbitration and the panel was not required to apply Puerto Rico law but rather the Commercial Arbitration Rules.  *See* Opp. Br. at 20.  The First Circuit has acknowledged that, in arbitration proceedings, "[a]rbitrators normally have the power to grant interim relief unless the parties specify otherwise in the contract" and that arbitration clauses "requir[ing] the parties to use the Commercial Arbitration Rules of the American Arbitration Association . . . empower an arbitrator to 'take whatever interim measures he or she deems necessary, including injunctive relief.'"  *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 70 (1st Cir. 2010) (quoting AAA R-34 and citing 1 M. Domke, Domke on Commercial Arbitration § 35:2 (3d ed. 2003)).[7]  The Commercial Arbitration Rules empower an arbitrator to "take whatever interim measures he or she deems necessary, including injunctive relief," AAA R-37(a), and that "[a]ny interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security," AAA R-38(g).  It is thus irrelevant whether Puerto Rico law would have permitted a court to issue this relief; the parties contracted for the arbitral panel to decide the dispute between them and the panel plainly had that power.  *See Matter of Arbitration Between Avraham and Shigur Exp. Ltd.*, 1991 WL 177633, at *4 (S.D.N.Y. Sept. 4, 1991) ("Those who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law.").  Nor has PBLA demonstrated why the panel's calculation of the interim award amounted to an error of law, other than boldly asserting that PBLA is entitled to the release of the disputed trust assets.  *See* Opp. Br. at 21.

---

[7] *See also British Ins. Co.*, 93 F. Supp. 2d at 516 ("[A]rbitrators may grant equitable relief that a district court cannot," and "[c]ourts in th[e] [Second] Circuit have firmly established the principle that arbitrators operating pursuant to such provisions have the authority to order interim relief in order to prevent their final award from becoming meaningless").

Having failed to prove any violation of law, PBLA is left with the argument that the panel's determination that ULICO had shown "immediate and irreparable loss or damage" sufficient to warrant an interim award under AAA Rule 38 was incorrect.  *See* AAA R-38(e)-(f).  But a district court does not sit in review of an arbitrator's application of its own rules, so long as those rules or the application do not manifestly disregard the law.  *See Duferco*, 333 F.3d at 390 ("We will, of course, not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result.  In the same vein, where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.").  PBLA offers no basis for its assertion that the panel misapplied the law to find "immediate and irreparable loss or damage" other than its bare disagreement with the outcome.  *See Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 356 (S.D.N.Y. 2014), *aff'd*, 619 F. App'x 37 (2d Cir. 2015) ("Nowhere does [plaintiff] identify a principle of law that the Arbitrator allegedly understood and ignored, or even misapplied.").  Such a disagreement does not constitute manifest disregard.

### C.    Whether Recognition or Enforcement of the Award Would be Contrary to Public Policy

PBLA argues that the Award would be contrary to the public policy under Article V(2)(b) of the Convention because its recognition or enforcement would require PBLA to violate a TRO entered by a North Carolina state court to which PBLA voluntarily subjected itself.  Opp. Br. at 15, 22.

Article V(2)(b) of the Convention allows a court to refuse enforcement where to do so would violate the public policy of the enforcing state.  However, it "must be 'construed very narrowly' to encompass only those circumstances 'where enforcement would violate our most basic notions of morality and justice.'"  *Telenor*, 584 F.3d at 411 (quoting *Europcar Italia, S.p.A.*

*v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998)).  The party opposing enforcement of

the arbitration award has to announce "some explicit public policy" of the country or state where

the award is to be enforced that is "well defined and dominant, and . . . ascertained 'by reference

to the laws and legal precedents and not from general considerations of supposed public

interests.'"  *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S.

757, 766 (1983) (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)); *see Saint Mary*

*Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 46 (2d Cir. 1997) ("[C]ourts

may refuse to enforce arbitral awards only in those rare cases when enforcement of the award

would be directly at odds with a well defined and dominant public policy resting on clear law

and legal precedent.").  This Court "must determine whether the award itself, as contrasted with

the reasoning that underlies the award, 'create[s] [an] explicit conflict with other laws and legal

precedents' and thus clearly violates an identifiable public policy."  *Int'l Bhd. of Elec. Workers,*

*Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (quoting *Misco*,

484 U.S. at 43).

### i.      North Carolina Proceeding

The relevant facts are as follows.

In June 2019, four insurance companies (the "NC Plaintiffs") owned by Lindberg were

placed into rehabilitation proceedings by the North Carolina Insurance Department after

Lindberg was convicted.[8]  *See* Br. at 7-8; Knoezer Decl., Ex. M at 1-2.  Also in June 2019,

---

[8] The Court takes judicial notice of the complaint, TRO, and subsequent orders concerning the
TRO in the North Carolina state court proceeding.  *See Glob. Network Commc'ns, Inc. v. City of
New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document
filed in another court not for the truth of the matters asserted in the other litigation, but rather to
establish the fact of such litigation and related filings.") (quoting *Int'l Star Class Yacht Racing
Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).  The Court does not
consider a letter submitted by the NC Plaintiffs to this Court on July 10, 2020.  The NC Plaintiffs

PBLA, Lindberg, and Lindberg's other companies entered into a memorandum of understanding ("MOU") with these insurance companies, pursuant to which certain assets would be contributed to a new holding company controlled in part by the rehabilitator. *See* Br. at 8; Knoezer Decl., Ex. M at 2. On October 1, 2019, the NC Plaintiffs brought suit against PBLA and other defendants, alleging that they had breached the MOU. *See* Knoezer Decl., Ex. M. On the same day that the suit was filed, the Superior Court of North Carolina entered a TRO that prohibited PBLA and the other defendants from "transferring, withdrawing, concealing, defalcating, disposing of, or encumbering, or causing any affiliated company to transfer, withdraw, conceal, defalcate, dispose of, or encumber, any of Defendants' assets, other than the expenses of ordinary business operations, without express authority of the Court." Pace Decl., Ex. 1 at 5 ¶ 5(ix). ULICO was not made a party to the North Carolina proceedings.

On October 7, 2019, the North Carolina court extended the TRO by consent of the parties. *Id.*, Ex. 2. ULICO still was not made a party to the North Carolina proceedings.

On November 8, 2019, PBLA notified ULICO that PBLA would be unable to sign an agreement to transfer assets to the Trust Account without approval from the North Carolina court. *Id.*, Ex. 4. On November 10, 2019, ULICO sent a revised, proposed agreement that stated:

> Whereas PBLA on October 1, 2019 became subject to a Temporary Restraining Order (the 'TRO') issued by the [North Carolina] Court that PBLA believes restricts certain transfers that are contemplated by this agreement;
> . . . .
> Whereas PBLA shall execute the transactions contemplated herein only upon obtaining any necessary Court approval and/or relief from the TRO . . . ;
> . . . .
> PBLA shall immediately transfer $232,481,206.57 of additional collateral from the PBLA main account assets into the ULICO reinsurance trust, provided that any

are not parties to this action and have not filed a motion to intervene pursuant to Fed. R. Civ. P. 24. Accordingly, the Court has disregarded their letter.

necessary Court approval and/or relief from the TRO, . . . are received, and subject
to the following provisions.

Opp. Br. at 7-8; Pace Decl., Ex. 5.

On April 2, 2020, the North Carolina court further amended the TRO to provide a
mechanism by which defendants could effectuate transactions that they suspected may be
restrained by the terms of the TRO by submitting such transactions to a panel for review and
approval, which, in turn, would be submitted to the court.  Pace Decl., Ex. 3.

### ii.    Application

PBLA's argument can be understood in one of two ways, neither of which is meritorious.

PBLA could be understood to argue, in effect, that the TRO relieved it of its obligations
under the Reinsurance Agreement.  So understood, the argument is forfeited by PBLA's failure
to raise this argument before the panel.  If a party "fail[s] to raise the issue . . . to the arbitrators,
the issue is forfeited.  And if [the party] did raise the issue to the arbitrators, it cannot seek to
relitigate the matter here."  *Europcar Italia*, 156 F.3d at 315; *see also Yukos Capital S.A.R.L. v.
Samaraneftegaz*, 592 F. App'x 8, 11 (2d Cir. 2014) ("[T]his court has tightly restricted the public
policy exception, emphasizing that the exception applies only where enforcement of the
arbitration award, as opposed to enforcement of the underlying contract, would violate public
policy.").[9]

---

[9] PBLA does not dispute that it never raised the issue of the TRO before the panel, instead
arguing that this Court has broad discretion to consider issues not raised below, especially where
the issue is necessary to avoid a "manifest injustice."  Dkt. No. 46 at 1-2.  But the case to which
PBLA cites, *United States v. Gomez*, 877 F.3d 76, 92-93 (2d Cir. 2017), refers to the discretion
of a federal appellate court "to consider issues that were raised, briefed, and argued in the district
court, but that were not reached there."  That case did not address a district court's authority to
consider issues not reached by the arbitration panel, and further, PBLA did not raise, brief, or
argue the TRO before the panel so that any manifest injustice would be the result of its own
doing.
The two out-of-circuit cases in the arbitration context cited by PBLA in its reply are also
inapposite.  *See* Dkt. No. 46 at 1-2.  PBLA cites *Newkirk v. Chicago & North Western Transp.*,

PBLA's argument could also be understood to state a restraint on the power of this Court—that it would be contrary to public policy for this Court to enter a judgment that would require PBLA to violate an order of another court. So understood, the argument fails for two independent reasons.

First, by its terms, it is questionable whether the TRO prevents PBLA from complying with the Award or a judgment of this court confirming the Award. The TRO prevents PBLA from "transferring, withdrawing . . . any of [its] assets, other than the expenses of ordinary business operations, without express authority of the Court." Pace Decl., Ex. 1 at 5 ¶ (5)(ix). The amended TRO establishes a mechanism by which a defendant in that action can present a proposed transaction to a review panel and the North Carolina state court. *Id.*, Ex. 3 at 5-6 ¶¶ 7-8, 10. The amended TRO also states that "[b]y agreement, the parties may move forward with any transaction that any party believes may be restrained by the terms of the TRO, as modified by the Consent Extension Order, without being deemed to have violated either." *Id.* at 3-4 ¶ 3. PBLA was required, in its ordinary business operations, to post the collateral. This Court cannot say, in advance, that compliance with the Award and the confirmed judgment necessarily would violate the plain language of the TRO. And even if the posting of collateral was not deemed to be an expense of ordinary business operations, PBLA may seek permission from the review panel and the North Carolina state court to comply with the judgment. PBLA offers no reason to believe that the North Carolina state court would not honor this Court's judgment. Thus, this

---

1996 WL 164376, at *2-3 (N.D. Ill. Apr. 2, 1996) for the proposition that a court will decide issues not properly raised before a panel. There, the court addressed the merits because of the "specific directive" in a Seventh Circuit opinion that held that an arbitrator's silence on the issue of whether lost earnings may be offset by the doctrine of mitigation should be taken to mean that no offsets are to be made. *Id.* at *4; *see also United Transp. Union v. Union R. Co.*, 2014 WL 1612670, at *5 (W.D. Pa. Apr. 22, 2014) (applying same assumption about doctrine of mitigation). No such assumption applies here.

Court cannot say now that the two judgments conflict based on an assumption that the North Carolina court will deny the transaction when the plain terms of the TRO provide a way for such transaction to occur.[10]

Second, PBLA has not identified any public policy that prevents a second court from awarding judgment in favor of a party entitled to it simply because the defendant is subject to a prior court order from an earlier court that would make compliance difficult or impossible. To be sure, there is a public policy that a second court will honor a judgment entered by a prior court with due process in a proceeding involving the same parties. In that circumstance, the parties to the second proceeding were already given due process—their claims were heard, albeit in the first court and not the second. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). That policy is also reflected in the Full Faith and Credit Clause of the United States Constitution, which requires a federal court hearing a second proceeding to give preclusive effect to a state court judgment in the first proceeding as would be given that judgment under the law of the state in which the judgment was rendered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

---

[10] If, as PBLA argues, the Award and TRO conflict, it would be of PBLA's "own making" because it "committed itself voluntarily to two conflicting contractual obligations" when it agreed to extend the TRO, which, in effect, was equivalent to PBLA "seeking a court order to excuse it from performing" under its contract with ULICO. *W.R. Grace*, 461 U.S. at 767, 770; *see also Lowenschuss v. Kane*, 520 F.2d 255, 265 (2d Cir. 1975) ("Impossibility caused by a judicial order prohibiting performance will excuse a party's performance only if the fault of the party owing performance did not contribute to the order."). PBLA's contractual obligations to ULICO under the Reinsurance Agreement commenced in 2017, before the North Carolina court entered the TRO in October 2019, and it continued after the entry of that TRO. PBLA thus knew of its contractual obligations to ULICO at the time it agreed to extend the TRO. Further, the TRO was extended upon consent in October 2019 and amended by the North Carolina court in April 2020, and thus PBLA knew about the TRO during the pendency of both the litigation in this Court concerning the motion to compel arbitration and the proceeding before the arbitral panel, yet failed to raise its existence.

By the same token, it is equally well-established—and public policy—that an entity, such as ULICO, not made a party to the earlier proceeding is not bound by the decision of the first court.  The judgment of the first court cannot compromise the party's rights in the second proceeding.  *See Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made party by service of process."); *Taylor v. Sturgell*, 553 U.S. 880, 893 (listing the few exceptions to this rule); *see also Phillips v. Kidder, Peabody & Co.*, 750 F. Supp. 603, 606 (S.D.N.Y. July 24, 1990) ("[T]here must be both and identity of parties and identity of claims between the prior and subsequent litigation before the operation of claim preclusion is triggered.").  It follows necessarily that ULICO, not made a party to the earlier proceeding, is not deprived of its rights to have its award confirmed here by virtue of the judgment in that earlier proceeding.

There are also several rules and policies that give parties facing the risk of conflicting judgments, such as PBLA, the means to address that risk and the ability—if those means are not available—to mitigate the effect of conflicting judgments.  Those rules and policies presume that, in the absence of a party availing itself of them, there will be circumstances where two courts issue conflicting judgments and that there is no general public policy against conflicting judgments.  Thus, for example, Federal Rule of Civil Procedure 19 provides for joinder of indispensable parties, precisely to make a judgment binding against a nonparty who might otherwise not be bound.  *See Alex Charts and Charts Ins. Assoc., Inc. v. Nationwide Mutual Ins. Co.*, 16 F. App'x 44, 46 (2d Cir. 2001) ("The possibility of multiple judgments arises from the fact 'that a judgment is not res judicata as to, or legally enforceable against, a nonparty.' Joining the [nonparty] as a party avoids the possibility of multiple judgments.") (quoting *Provident*

*Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968)).  Federal Rule of Civil Procedure 22 and its state counterparts deal directly with the risk of conflicting judgments; they permit a party facing the risk of conflicting judgments to seek interpleader.  *See* Fed. R. Civ. P. 22; *see also State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967) ("Were [a] . . . company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims.  The difficulties such a race to judgment pose for the [company], and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy.").  Federal Rule of Civil Procedure 23(b)(1) is to the same effect when the risk is presented by multiple parties.  *See* Fed. R. Civ. P. 23.  These rules all assume and recognize what is otherwise obvious: there is no general rule against conflicting judgments, just a desire to avoid them and to mitigate their effect.

And, finally, when those and similar procedures are not available or a party chooses not to avail itself of the procedures, the law can mitigate the effect of conflicting judgments.  A person who fails to comply with a court order or judgment because he is clearly unable to comply with its terms may not be able to be held in contempt.  *See Turner v. Rogers*, 564 U.S. 431, 442 (2011) ("A court may not impose punishment 'in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order.'") (quoting *Hicks v. Feiock*, 485 U.S. 624, 638 n.9 (1988)); *United States v. Twentieth Century Fox Film Corp.*, 882 F.2d 656, 659 (2d Cir. 1989) (criminal contempt sanctions may be imposed only if contemnor "willfully violated the specific and definite terms of a court order").  Those rules again assume circumstances where a prior judgment prevents compliance with a later judgment; they do not preclude those circumstances.

That analysis provides the answer to the question PBLA presents here.  The Court need not inquire now whether something like interpleader was available to PBLA in North Carolina if it truly and honestly were concerned about the risk of conflicting judgments.  Nor need the Court inquire now into the circumstances by which PBLA agreed to the MOU or agreed to the continuance of the TRO.  PBLA has not identified any public policy that prevents this Court from ordering interim relief in favor of ULICO that the panel determined ULICO is plainly entitled to under the Convention and the FAA.  The panel found in favor of ULICO, and under governing law, ULICO is entitled to confirmation of the Award.  To the extent the judgment conflicts with that of the TRO in the North Carolina court, PBLA has the means to address that conflict at hand:  it can either petition the North Carolina court for relief, or, if NC Plaintiffs are able to successfully resist, it can find another way to satisfy those parties.  *See Chem. Overseas Holdings, Inc. v. Republica Oriental Del Uruguay*, 371 F. Supp. 2d 400, 402 (S.D.N.Y. 2005), *aff'd*, 246 F. App'x 6 (2d Cir. 2006) ("If a judgment is entered against Uruguay in the instant matter, it will not be without remedies, including an interpleader action . . . to satisfy its obligations under the judgment without violating any other decree, and to submit to an appropriate court the question of to whom the money is to be paid in order to satisfy the judgment.").  What PBLA cannot do is deprive ULICO of confirmation of an award to which ULICO is entitled pursuant to both governing law and a contract by which PBLA agreed to be bound.

### D.    Whether the Dispute is Arbitrable

Finally, PBLA argues that the dispute was not arbitrable under 9 U.S.C. § 10(a)(4) and Article V(2)(a) of the Convention because the arbitration clause of the Reinsurance Agreement was superseded by the Trust Agreement.  Opp. Br. at 15, 22-24.

This Court previously held that the Reinsurance Agreement and its arbitration clause were not superseded by the Trust Agreement and that the question of arbitrability was for the arbitrators to decide.  *See PB Life & Annuity*, 2020 WL 2476170, at *11.  The panel subsequently determined that the dispute was arbitrable.  *See* Knoezer Decl., Ex. L.  PBLA asks this Court to reconsider its decision and find that the arbitration clause is unenforceable as it relates to this dispute, but that the other provisions of the Reinsurance Agreement remain in effect.  Opp. Br. at 23.  PBLA could have made that request in a motion for reconsideration but declined to do so.  *See* S.D.N.Y. Local Civil Rule 6.3 (notice of motion for reconsideration shall be served within fourteen (14) days after determination of motion).  In any event, PBLA has not shown "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" so as to warrant reconsideration of this Court's opinion.  *Kolel Beth*, 729 F.3d at 104.  The Court's original decision was correct and the Court will not reconsider it.

## II.     Motion to Confirm

As explained above, PBLA has not provided any ground to vacate, modify, or correct the Award.  *See* 9 U.S.C. § 9; *see also D.H. Blair & Co.*, 462 F.3d at 110.  Therefore, the Award is confirmed.

**CONCLUSION**

For the reasons stated herein, the motion to confirm the Award is GRANTED.  The cross-motion to vacate is therefore DENIED.

Defendant ULICO shall file a proposed judgment within seven (7) days of this Opinion & Order.

The Clerk of Court is respectfully directed to administratively close this case without prejudice to either party moving to confirm or vacate the panel's final award.


SO ORDERED.


Dated: July 30, 2020
      New York, New York            LEWIS J. LIMAN
                                    United States District Judge